# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION

| | |
|---|---|
| **AARON READ,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No._____ |
| v. ) | **JURY DEMAND** |
| ) | |
| **METRO. GOV'T. OF NASHVILLE** ) | |
| **AND DAVIDSON COUNTY,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

### INTRODUCTION

1. This civil action arises under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq., to redress unlawful disability discrimination and retaliation by the Defendant Metropolitan Government of Nashville and Davidson County ("Metro").

2. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging disability discrimination and retaliation. See Exhibit A, Charge of Discrimination.

3. The EEOC issued a Notice of Right to Sue, which was received by Plaintiff within ninety (90) days of this filing. See Exhibit B, Determination and Notice of Rights.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(4) (civil rights enforcement), because this action arises under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. The enforcement provisions of the ADA adopt the procedures of Title VII, 42 U.S.C. § 2000e–5(f)(1)–(3), through 42 U.S.C. § 12117(a).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices alleged herein occurred in the Middle District of Tennessee.

## PARTIES

6. Plaintiff is a resident of Tennessee who was employed by the Nashville Fire Department, an agency of the Metropolitan Government of Nashville and Davidson County.

7. Defendant is a local government entity and employer within the meaning of 42 U.S.C. § 12111(5), doing business in Davidson County, Tennessee.

## FACTS

8. Plaintiff was employed as a paramedic with the Nashville Fire Department ("NFD"), an agency of the Metropolitan Government of Nashville and Davidson County. In that capacity, Plaintiff routinely responded to critical incidents involving fatalities, severe injuries, and traumatic scenes, placing him in sustained high-stress and psychologically hazardous conditions.

9. Over time, Plaintiff developed symptoms consistent with post-traumatic stress disorder (PTSD), including intrusive recollections, insomnia, anxiety, and emotional exhaustion. These symptoms were triggered and intensified by his repeated exposure to

traumatic emergency calls, including a multi-fatality event involving children on or about January 28, 2022.

10. Following these incidents, Plaintiff made multiple verbal and written requests for support and time off, and he communicated to supervisory personnel that he was struggling with the psychological impact of duty-related trauma. Plaintiff also advised department leadership of his need for mental-health assistance and requested accommodation under applicable law and policy.

11. Plaintiff further raised concerns regarding NFD's failure to provide adequate behavioral health resources and its noncompliance with the James "Dustin" Samples Act, a Tennessee statute enacted to protect and accommodate first responders who experience PTSD as a result of on-duty trauma. These communications were protected activity under the ADA.

12. Despite clear notice of Plaintiff's disability and repeated pleas for assistance, Defendant's supervisory personnel failed to initiate an interactive process or to offer any reasonable accommodation, such as temporary leave, reassignment, or referral for mental-health evaluation. Instead, they convened a meeting on or about April 15, 2024, during which Plaintiff was confronted with allegations of documentation errors and threatened with disciplinary and licensure action unless he agreed to resign.

13. Under these coercive circumstances, Plaintiff was compelled to submit his resignation, fearing loss of his paramedic license and future employment if he refused. The resignation was not voluntary but was a constructive discharge that directly resulted from Defendant's failure to accommodate and its retaliation for Plaintiff's protected mental-health advocacy and accommodation requests.

# CLAIMS

## COUNT I: Disability Discrimination

14. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

15. Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12102(1). Plaintiff suffers from post-traumatic stress disorder (PTSD), a mental impairment that substantially limits one or more major life activities, including sleeping, concentrating, communicating, and working.

16. Defendant is a covered employer under 42 U.S.C. § 12111(5). At all relevant times, Plaintiff's supervisors, acting as agents of Defendant, had actual and constructive notice of Plaintiff's mental-health condition and his need for accommodation.

17. Defendant was placed on actual notice of Plaintiff's condition through multiple, explicit communications made well before Plaintiff's coerced resignation. Beginning immediately after a multi-fatality call on January 28, 2022, Plaintiff reported to his District Chief that he was not coping well mentally and requested time off to recover from the trauma. His requests were denied.

18. In the weeks that followed, Plaintiff made additional statements to supervisory personnel describing emotional exhaustion, anxiety, and an inability to "mentally handle" further high-stress calls. A colleague later confirmed by text that she heard Plaintiff state that he "wanted to kill himself" and called peer support on his behalf. Following that call, one of the chiefs met with Plaintiff, gave him a brief "pep talk," and took no further action.

19. Plaintiff's repeated statements regarding severe emotional distress, difficulty coping with traumatic emergency calls, and suicidal ideation were sufficient to place Defendant on actual notice of a potential disability under the ADA, even in the absence of a

formal diagnosis. Defendant's supervisors were explicitly informed of Plaintiff's mental-health struggles and his expressed need for time off and counseling.

20. The ADA prohibits discrimination "against a qualified individual on the basis of disability" in regard to discharge, employee compensation, training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). A covered employer's "[failure to make] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" constitutes unlawful discrimination. 42 U.S.C. § 12112(b)(5)(A). See also *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868–69 (6th Cir. 2007)("...failing to make a reasonable accommodation falls within the ADA's definition of 'discrimination.'").

21. In *EEOC v. Dolgencorp, LLC*, the Sixth Circuit reaffirmed that "[o]nce [the disabled individual] requested [a] reasonable accommodation, the employer had a duty to explore the nature of the employee's limitations, if and how those limitations affected [his] work, and what types of accommodations could be made." *EEOC v. Dolgencorp, LLC*, 899 F.3d 428, 436 (6th Cir. 2018). The court further held that "failing to provide a protected employee a reasonable accommodation constitutes direct evidence of discrimination." Id. at 435.

22. The Sixth Circuit in *Dolgencorp* also quoted *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, emphasizing that "'[f]ailure to consider the possibility of reasonable accommodation for known disabilities, if it leads to discharge for performance inadequacies resulting from the disabilities, amounts to a discharge solely because of the disabilities.'" *Dolgencorp*, 899 F.3d at 435 (quoting *McPherson*, 119 F.3d 453, 460 (6th Cir. 1997)).

23. Despite this notice and the availability of reasonable accommodations—including temporary medical leave, referral for behavioral-health evaluation, or reassignment to less traumatic duties—Defendant failed to engage in the interactive process

required by the ADA. See *Jakubowski v. Christ Hosp.*, Inc., 627 F.3d 195, 202–03 (6th Cir. 2010) (holding that an employer must engage in the interactive process in good faith once aware of an employee's need for accommodation). "An employer has sufficiently acted in good faith when it readily meets with the employee, discusses any reasonable accommodations, and suggests other possible positions for the plaintiff." Id. at 203. Although supervisors met with Plaintiff, they never discussed any reasonable accommodations or suggested other possible positions for Plaintiff.

24. In fact, instead of initiating that process, Defendant treated Plaintiff's mental-health distress as a disciplinary problem. Supervisors denied his requests for relief, mocked his plea for a "mental health day," and failed to refer him for evaluation through the Department's Behavioral Health Team or any other resource. By doing so, Defendant violated the ADA's mandate to reasonably accommodate employees with known mental limitations and to engage in a meaningful, good-faith dialogue about potential accommodations.

25. On or about April 15, 2024, after months of unaddressed mental-health symptoms and repeated pleas for support, Defendant's supervisors summoned Plaintiff to a meeting, threatened his termination and licensure, and coerced his resignation. The meeting occurred just weeks after Plaintiff renewed his mental-health complaints and raised questions about Defendant's compliance with the James "Dustin" Samples Act, a Tennessee statute enacted to protect first responders suffering from PTSD.

26. Such conduct constitutes constructive discharge, a recognized form of adverse employment action when working conditions become "so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004); *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107–08 (6th Cir. 2008).

27. Defendant's actions also constituted disparate treatment on the basis of disability. Other, non-disabled employees accused of comparable or more serious documentation or performance issues—including employees disciplined for medication errors, drug-policy violations, or workplace misconduct—were not threatened with state licensure revocation, nor coerced into resigning. Instead, such employees were routinely offered opportunities for remediation, counseling, or reinstatement after brief suspensions. In contrast, Plaintiff—whose conduct was allegedly related to untreated post-traumatic stress disorder—was compelled to resign under threat of professional ruin. See *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891-2 (6th Cir. 2016) (A plaintiff may establish an inference of discrimination by showing that similarly situated non-protected employees were treated more favorably.).

28. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, emotional distress, reputational damage, and loss of career opportunities.

**COUNT II: Retaliation**

29. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

30. The ADA prohibits retaliation against an employee who opposes disability-based discrimination or who requests accommodation for a perceived disability. 42 U.S.C. § 12203(a).

31. To establish retaliation, Plaintiff must show: (1) engagement in protected activity; (2) Defendant's knowledge of that activity; (3) subsequent adverse employment action; and (4) a causal connection between the two. *A.C. ex rel. J.C. v. Shelby County Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013).

32. Plaintiff engaged in protected activity when he repeatedly informed his supervisors that he was suffering serious mental-health distress following traumatic duty calls, reported suicidal thoughts, and requested time off and counseling. Although Plaintiff had not yet been formally diagnosed with post-traumatic stress disorder (PTSD), these communications placed Defendant on notice that he was requesting assistance for a medical condition affecting his ability to work. *Yanick v. Kroger Co. of Mich.*, No. 23-1439, 2024 U.S. App. LEXIS 10563, at *9–10 (6th Cir. Apr. 29, 2024) ("Employers must draw reasonable inferences from what an employee says, bearing in mind the statements' context.").

33. Defendant had actual knowledge of Plaintiff's mental-health struggles and his requests for relief. Plaintiff disclosed to multiple NFD command-level officials that he "was not doing well," "needed time off," and "needed help," and a colleague contemporaneously reported Plaintiff's suicidal ideation to peer-support supervisors. These disclosures were sufficient to activate Defendant's duty "to explore the nature of the employee's limitations, if and how those limitations affected her work, and what types of accommodations could be made." *Dolgencorp, LLC*, 899 F.3d at 434.

34. Despite this notice, Defendant retaliated by summoning Plaintiff to an unannounced meeting on April 15, 2024, in which four supervisory officers confronted him with pretextual allegations, threatened to revoke his paramedic license, and coerced his resignation. The proximity between Plaintiff's protected communications in early 2024—when he invoked his rights under the James "Dustin" Samples Act and requested mental-health support—and his forced resignation weeks later supports a strong inference of causation. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of

satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.").

35. Defendant's retaliatory conduct "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

36. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered economic loss, emotional distress, and reputational harm. Plaintiff seeks compensatory damages, back pay, front pay, reinstatement, and attorney's fees and costs pursuant to 42 U.S.C. § 12205.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and grant the following relief:

37. <u>Declaratory Relief</u> - Declare that Defendant's conduct, policies, and practices, as described herein, constitute unlawful discrimination, retaliation, and constructive discharge in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112(a) and 12203(a).

38. <u>Injunctive and Equitable Relief</u>

    a. Order Defendant to reinstate Plaintiff to his prior position or a substantially equivalent position, with full seniority, benefits, and rights; or, in the alternative,

    b. Award front pay in lieu of reinstatement where reinstatement is not practicable due to ongoing retaliation or hostility;

    c. Require Defendant to expunge from all personnel and disciplinary records any

reference to Plaintiff's forced resignation or alleged performance issues;

 d. Order Defendant to revise its internal policies and training to ensure compliance with the ADA and the James "Dustin" Samples Act, including protocols for identifying and accommodating first responders suffering from PTSD or mental-health injuries sustained in the line of duty; and

 e. Enjoin Defendant from further engaging in any form of disability-based discrimination or retaliation against Plaintiff or any other employee.

39. <u>Compensatory Damages</u> - Award Plaintiff compensatory damages, pursuant to 42 U.S.C. § 1981a(a)(2), in an amount to be determined by the jury, for:

 a. Lost wages and benefits resulting from his coerced resignation;

 b. Back pay from April 15, 2024 through the date of judgment;

 c. Front pay for loss of future earning capacity;

 d. Emotional distress, humiliation, and mental anguish caused by Defendant's unlawful conduct; and

 e. Reputational harm and diminished professional standing within the emergency medical services community.

40. <u>Punitive Damages</u> - Award punitive damages under *Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999), for Defendant's willful, malicious, or reckless indifference to Plaintiff's federally protected rights. See Restatement (Second) of Torts § 908(2) (1979) ("Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others").

41. <u>Attorney's Fees and Costs</u> - Award Plaintiff reasonable attorney's fees, expert witness fees, and litigation costs pursuant to 42 U.S.C. § 12205.

42. <u>Interest</u> - Award prejudgment and post-judgment interest as allowed by law.

43. <u>Other Relief</u> - Grant such other and further legal or equitable relief as this Court deems

just and proper to remedy Defendant's violations of law.

Respectfully submitted,

s/Aaron Read/
AARON READ

By: s/Cody Johnson/

CODY JOHNSON
Attorney for Plaintiff
102 East Main St. Suite A
Lebanon, TN 37087
(629) 200-7774
cody@turklaylaw.com

VERIFICATION

I AARON READ, declare that I am the Plaintiff in the foregoing instrument, and the facts stated therein are true and correct to the best of my knowledge and belief, and that the Complaint is not made out of levity or by collusion with the Defendant, but in sincerity and truth for the causes mentioned herein.

s/Aaron Read/
AARON READ